### JESSE SHARP v. THE STATE.

*No. 3586.　Decided November 22.*

1.　**Evidence — Ownership. —** Indictment for **Theft,** in the first count, alleged the ownership of the property in a person unknown to the grand jury, and in the second count in I. E. Stout.　The evidence failing to sustain either of the said counts, and with regard to the first count to show that the grand jury exercised reasonable diligence to ascertain the fact of ownership, the conviction for these reasons must be set aside,

2.　**Same—Principal Offender.**—It is now a well settled principle of law that the mere presence of an accused at the time and place of the commission of a felony, if he takes no part by word or act in the crime, will not implicate him as a principal offender, even though he makes no effort to prevent the perpetration of the crime.　The mere inactive presence of the accused is the utmost established by the State's proof in this case.　Hence the evidence is insufficient to inculpate the accused.

APPEAL from the District Court of Ellis.　Tried below before Hon. Anson Rainey.

The substance of the indictment is set out in the opinion.　The penalty assessed by the verdict was a term of two years in the penitentiary.

With regard to the first count in the indictment, alleging the ownership of the steer to be in a person unknown to the grand jury, Wear, the one witness who testified to the taking, stated that the animal was in the "square and O" brand, and that it had been known as an estray.　This was the only witness who testified on this trial, so far as shown by the record, who was before the grand jury.　He could not remember whether or not he was asked by the grand jury about the ownership of the animal. He remembered no other brand on the animal.　The records of Ellis County showed one Dr. Edwards to be the owner of the "square and O"

brand. Taking the description of the animal as given by Wear, three other witnesses for the State testified that they knew such an animal on the range, except that he had the figure 5 branded on his left *hip*. They knew that animal as an estray.

In support of the allegation of ownership in Stout, it appears from his testimony that in 1884 and 1885 he lived in Ennis, Texas, as did also Dr. Edwards and one W. A. House, and that in June or July, 1884 or 1885, he and House bought of Dr. Edwards 500 or 600 head of cattle in the "square and O" brand, which brand Dr. Edwards owned. He did not remember whether or not they bought all of the cattle in said brand. They did not buy the brand. The cattle purchased were kept in pastures and under herd in Ellis County about six weeks, and were then driven to the Love pasture in Navarro County, about thirty-two miles from Ennis and about the same distance from Mill Creek, and were there branded with a figure 5 on left *shoulder*. This brand was unrecorded. The cattle were kept in the Love pasture about two years, and were sold at various times. The fences were bad and the gates were sometimes left open, and several of these cattle were lost. None of them were found in Ellis County after their removal to the Love pasture, though witness found several in Navarro County, about the pasture. He knew nothing of the steer in controversy in this case, and did not consent for defendant or any one else to take it.

The testimony of W. A. House was, in substance, the same as that of Stout, save that he did not remember whether the purchase was in 1883, 1884, or 1885, and he stated that at the time of their purchase the range of the cattle bought was on Cedar Creek, about twelve or fifteen miles east of Ennis, near Trinity River; while Mill Creek is some fifteen miles west of Ennis. He did not know the range of the cattle before their purchase, and knew nothing of the particular animal in controversy, but did not consent for defendant or any one else to take it.

The record of marks and brands of Ellis County showed "square and O" to be the brand of Dr. Edwards, and that it was recorded in August, 1876.

It further appears that Edwards owned cattle in the "square and O" brand on the range in Ellis County at the time of this alleged theft.

Wear was the only witness who testified to any fact relating to the taking or connecting the defendant therewith. He testified that in August, 1885, in passing through Mill Creek bottom, in Ellis County, he saw the steer in question killed by Bob Morgan. Appellant and William Sharp were present. The witness did not see appellant do anything. He was just standing by. The witness was attracted by the bellowing of a steer; looked in the direction of the sound; heard the sound of a blow; saw the steer fall, and saw Bob Morgan dragging something behind him on the ground, but could not tell whether it was an axe or a club, as it was partly

hidden by briers. This was all he saw. He was about 150 yards distant from the place of the killing. He was a little near sighted. About two hours after the killing Bob Morgan and William Sharp, in a wagon, passed where witness was at work, with something in the wagon covered by a sheet, and there was blood on the sheet. Appellant was not with them. He lived in a different direction from the place of the killing, while Morgan and William Sharp, in going to their homes from the place of the killing, could come by where the witness was at work or could have gone another way.

*G. C. Groce,* for the appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—This conviction is upon an indictment for the theft of a steer. There are two counts in the indictment, the first alleging that the owner of the steer was unknown to the grand jury, and the second alleging that I. E. Stout owned the steer. It is contended by counsel for the defendant that neither of the counts as to the allegations of ownership is sustained by the evidence, and we are of the opinion that the contention is well grounded. As to the first count, there is no evidence that the ownership of the animal was unknown to the grand jury, and that the grand jury used reasonable diligence to ascertain the fact of ownership. Mixon v. The State, 28 Texas Ct. App., 347. As to the second count, the evidence does not establish that I. E. Stout was the owner of the steer. On the contrary, to our minds the evidence shows that one Edwards was the owner. It had Edwards's brand upon it, which brand was recorded and was therefore evidence of ownership. Edwards owned cattle in that brand on the range in Ellis County about the time the steer in question was missing from its accustomed range. The brand 5 upon the steer was not a recorded brand; was not evidence of ownership in Stout, and did not identify the animal as one of the lot of cattle bought by him of Edwards. Stout testified that he branded the cattle he purchased of Edwards with 5 on the left *shoulder*. The 5 brand on the animal in question was on the left *hip*. It does not appear upon which count the jury based their verdict. If either count was sustained by the evidence the verdict would be good, but as neither count was sustained as to ownership, the verdict can not stand.

We are further of the opinion that the evidence is insufficient to establish the defendant's complicity in the theft of the steer. It merely shows his presence at the time the steer was taken by another. He was not seen to do anything or heard to say anything. He was not seen to render any aid, assistance, or encouragement to the person who took the steer, nor did he go with that person from the place where the steer was taken. So

far as the evidence shows, his only connection with the transaction was
that he was present at the time and place the steer was taken.    It is well
settled that the mere presence of an accused at the time and place of the
commission of a felony, if he takes no part by word or act in the crime,
will not implicate him as a principal offender, even though he makes no
effort to prevent the perpetration of the offense.    Jackson v. The State,
20 Texas Ct. App., 190; Golden v. The State, 18 Texas Ct. App., 637.

Other questions presented in the record are not determined because un-
necessary to the present disposition of the case, and because they may not
arise on another trial.

Because the conviction is not warranted by the evidence, the judgment
is reversed and the cause is remanded.

*Reversed and remanded.*

Hurt, J., absent.